**Harvey E. WARD**

v.

**The UNITED STATES.**

No. 6–76.

United States Claims Court.

Nov. 23, 1982.

---

**5.** An analogous jurisdictional issue to that raised here was presented in *Megapulse, Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir.1982). There the district court had declined to entertain a suit for injunctive relief against the United States (to restrain the disclosure of certain technical data) on the ground that the issues were contract related and therefore fell within the exclusive province of this court. In reversing this dismissal for lack of jurisdiction, the appellate court pointed out that, while heed had to be taken to avoid suits under the Administrative Procedure Act that were but Tucker Act suits in disguise, nevertheless, the mere existence of contract-related issues did not convert every such action to one based on a contract. "[R]ational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds", *Megapulse, Inc. v. Lewis, supra,* 672 F.2d at 969–70, remain within the court's power to draw. Here, as in *Megapulse,* plaintiffs' suit has contract overtones but it does not seek the enforcement of rights or expectations bottomed on a contract.

Thomas M. Gittings, Jr., Washington, D.C., for plaintiff.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

Before SPECTOR, Presiding Judge, LYDON and YANNELLO, Judges.

## OPINION

SPECTOR, Judge:

By Senate Resolution 484, 94th Cong., 2d Sess., the United States Senate referred a bill (S. 3648) entitled "A bill for the relief of Harvey E. Ward" to the Chief Commissioner of the United States Court of Claims.[1] The bill would restore to Mr. Ward the sum of $15,475.59, representing U.S. Coast Guard disability retirement pay "which was withheld from him as a result of his employment as a teacher by the Department of Education of the State of Tasmania, Australia, from 1960 to 1964 * * *."

The Resolution calls on the Chief Commissioner (now Chief Judge) to proceed—

in accordance with the provisions of sections 1492 and 2509 of title 28, United States Code, and report thereon to the Senate, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States or a gratuity and the amount, if any, legally or equitably due from the United States to the claimant.

Pursuant to 28 U.S.C. § 2509(c), Trial Commissioner (now Judge) Willi was designated:

[T]o determine the facts, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy. He shall append to his findings of fact conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any legally or equitably due from the United States to the claimant.

Judge Willi has done this in a comprehensive opinion filed February 5, 1982. His findings and conclusions have been submitted together with the record in this case to the Review Panel which has also had the benefit of the briefs which were thereafter submitted to it by the parties.[2]

On the basis of the entire record, the Review Panel hereby adopts Judge Willi's findings and conclusions. We further determine, however, that some of the reasons offered to support his conclusion are unnecessary and are better eliminated, for the reasons following.

Judge Willi concludes "that the claimant is *equitably* due the retirement benefits withheld from him and that such an award would in no sense constitute a gratuity." (Emphasis supplied). The record confirms that his conclusion is eminently correct. For a better understanding of the reasoning offered to support that conclusion, it would be helpful to very briefly summarize the facts.

Mr. Ward, after retiring in 1946 on service-connected disability as a Chief Petty Officer with the Coast Guard, attended the university and obtained both a B.A. and M.A. in Education. In 1960, he asked the Coast Guard for permission to live in Tasmania, Australia, in order to teach there.[3] The Coast Guard had no objection and reminded him only that he not forfeit his citizenship by executing an oath of allegiance to a foreign state. After ascertaining that the teaching position entailed no

---

1. The Chief Commissioner is now designated as Chief Judge of the newly created U.S. Claims Court, pursuant to the Federal Courts Improvement Act of 1982, amending Title 28, U.S. Code, §§ 1492 and 2509.

2. There has been no request for oral argument before the Review Panel.

3. The school was not identified as being private or state-supported.

such oath, he proceeded to Australia to teach.

Later, in 1963, he asked the Coast Guard for permission to move from Australia to New Zealand to teach there. The request was withdrawn when the New Zealand position did not materialize, but it alerted the Coast Guard to write him in 1964, raising a constitutional problem for the first time. He was warned as to the application of Article 1, Section 9, clause 8 of the U.S. Constitution, which provides as follows:

No Title of Nobility shall be granted by the United States and no Person holding any Office of Profit or Trust under them, shall, without the Consent of Congress, accept of any present, Emolument, Office or Title, of any kind whatever from any King, Prince, or foreign State.

Thereafter the Coast Guard advised plaintiff that his retired pay would be withheld pending a final determination. He immediately resigned his teaching job, and asked for reinstatement of his retired pay. However, the Comptroller General of the United States then issued a decision holding that the acceptance by this retired enlisted man of a teaching salary from the Department of Education in Tasmania, Australia, was prohibited by the constitutional provision above-quoted and that:

[S]ubstantial effect can be given such provision by withholding retired pay from Mr. Ward in an amount equal to the salary he has received from the State of Tasmania * * *. That amount should be retained unless and until Congressional consent to its receipt by Mr. Ward is obtained.

When he asked for further instructions, the Coast Guard advised that "[a]ny further step by you would depend on a suit in the Court of Claims or a private bill for relief in Congress." It was also suggested that he could appeal directly to the Comptroller General, or write his Congressman for legislative relief. When asked to reconsider, the Comptroller General reaffirmed his decision that only by consent of Congress could Mr. Ward expect to recover the retired pay which was being withheld.

Summarizing Mr. Ward's efforts to obtain Congressional consent, the House of Representatives has on three separate occasions passed legislation in the form of resolutions registering its consent. The Treasury Department,[4] the State Department and the Comptroller General have each gone on record as having no objection to the enactment of legislation restoring the retirement benefits which have been withheld from Mr. Ward. The Senate has since joined with the House in enacting general legislation[5] granting the consent of Congress to a military retiree's acceptance of civil employment and compensation from a foreign government provided that advance approval of the employment is obtained from the Secretary of State and from the head of the relevant military department.[6]

Mr. Ward exercised care and attempted in a clearly cooperative spirit to obtain in advance and to follow instructions from the Coast Guard regarding his proposed overseas employment.[7] This is, therefore, a classical case for concluding, as we have, "that the claimant is *equitably* due the retirement benefits withheld from him and

4. Which had jurisdiction over the Coast Guard at the time.

5. Section 509 of the Foreign Relations Authorization Act, Fiscal Year 1978, Pub.L.No. 95–105, 91 Stat. 844, 859.

6. Senator Thurmond, in offering an amendment to the House version of the bill, stated that the denial of retired pay in these circumstances was "due to a questionable interpretation by the Comptroller General of a phrase in the Constitution which I do not believe was intended by the framers of the Constitution 200 years

ago. The Constitution also provides for the Congress to modify this phrase contained in article I, section 9, clause 8 * * *. Mr. President, I offer an amendment to H.R. 6689 to correct this inequity. I urge my distinguished colleagues to join those in the House who have made an effort to remove this injustice * * *."

7. As stated, the Coast Guard, State Department and Comptroller General interpose no objection to enactment of this bill for the relief of Mr. Ward.

that such an award would in no sense constitute a gratuity." (Emphasis supplied).[8]

That is a conclusion under 28 U.S.C. § 2509 "sufficient to inform Congress whether the demand is a legal *or* equitable claim * * *." (Emphasis supplied). It is, in other words, not necessary to find that the claimant has both a legal *and* equitable claim, since the statute is in the disjunctive, and not in the conjunctive. The parties have in fact stipulated that claimant has no enforceable legal claim.

It is at this point that Judge Willi has introduced discussion not necessary to support the conclusion which he and we have reached, and which tends to complicate rather than simplify the basis for that conclusion. He finds that the decision of the Comptroller General, as above related, "is doubtful, as a matter of law * * *," and after extended discussion he further finds that "the constitutional restraint of Article I (of the Constitution) does not, as a matter of law apply to" Mr. Ward. He then proceeds to find that:

> * * * every legal claim necessarily presents, as lesser included, an "equitable claim" in its most compelling form. [9] Accordingly, the strong indications that the withholding of claimant's retirement benefits was unlawful as a matter of constitutional law serve to reinforce the conclusion that his present demand is an "equitable claim" in the fullest sense of the term and redress of it would in no event amount to a gratuity. [10]

Because 28 U.S.C. § 2509(c) also requests a finding of "facts claimed to *excuse* the claimant for not having resorted to any *established* legal remedy," (emphasis supplied), Judge Willi then meets the argument of the statute of limitations, as a bar to any legal remedy, by observing:

The record has persuaded me that claimant acted punctually and responsibly in proceeding as he did, *given the advice imparted to him* by both the Coast Guard and the Comptroller General. The successive successes that he achieved in securing passage of relief bills by the House of Representatives furnished rational encouragement [footnote omitted] for his continuing to pursue a legislative remedy rather than abandoning efforts on that front in favor of instituting a suit that would have been timely under the applicable statute of limitations. [Emphasis supplied].

The foregoing is surplusage, because there was not, as we have seen, "any *established* legal remedy" (emphasis supplied) when Mr. Ward, for many sound reasons undertook to pursue a legislative remedy. The Coast Guard had informed him that he had no legal remedy. In two decisions, the Comptroller General had formally ruled to that effect. And Congress eventually provided a legal remedy, which is a strong indication that "any established legal remedy" was not theretofore available.[11]

In short, we adopt the findings and conclusion set forth in Judge Willi's opinion with the sole exception of those portions inconsistent with the foregoing. Claimant is equitably due the retirement benefits withheld from him, and payment to him of those retirement benefits would in no sense constitute a gratuity.

---

**8.** *See* and *cf.,* for example, *Burkhardt v. United States,* 113 Ct.Cl. 658, 84 F.Supp. 553 (1949).

**9.** This is not necessarily correct. There are undoubtedly legal claims which are not founded on equity. Contrariwise, an equitable claim need not depend on the existence of an underlying legal claim.

**10.** This dicta may well be the basis for the somewhat inconsistent argument of defendant's counsel that claimant has no equitable claim, because he had a legal claim, but he has no legal claim because he had no excuse for not pursuing it.

**11.** *See* note 5, *supra.*