WHITE SANDS RANCHERS OF NEW MEXICO, on Behalf of Themselves and Others Similarly Situated,

v.

The UNITED STATES.

Cong. Ref. No. 2–84.

United States Claims Court.

Nov. 30, 1988.

Harold L. Hensley, Jr., Roswell, N.M., atty. of record, for plaintiff.

Gerald S. Fish, Washington, D.C., with whom was Asst. Atty. Gen. Roger J. Marzulla, for defendant.

Before the Review Panel: ROBERT J. YOCK, Judge, Presiding, CHRISTINE COOK NETTESHEIM and ERIC G. BRUGGINK, Judges.

REPORT OF THE REVIEW PANEL

This Congressional Reference case[1] is currently before the Review Panel on appeal from the Hearing Officer's Report and Opinion which concluded that no legal or

---

1. Senate bill, S. 2761, 98th Cong., 2d Sess. (1984), was introduced before the Senate by Senator Pete V. Domenici of New Mexico. The purpose of this bill was to provide compensation to individuals owning real property or grazing privileges within the White Sands Missile Range at the time such interests were taken by the Government for war and national defense purposes. Pursuant to a Senate Resolution, S.Res. 405, 98th Cong., 2d Sess. (1984), this bill was referred to the United States Claims Court for a determination as to whether a legal or equitable claim exists in favor of the White Sands Ranchers, under the circumstances defined herein. This Court is to proceed in accordance with the procedures contained in 28 U.S.C. §§ 1492, 2509 (1982).

equitable claim existed in favor of the White Sands Ranchers since there had been no violation of the fifth amendment takings clause and no abuse of administrative discretion in applying a federal grazing statute. Familiarity with the factual background set out in the Hearing Officer's Report and Opinion, 14 Cl.Ct. 559, is presumed.

By way of a Senate Resolution, Congress instructed this Court to determine whether the White Sands Ranchers are entitled to compensation "for the loss of real property, grazing privileges, and the value of mineral claims [2] resulting from the actions of the United States in acquiring land for the White Sands Missile Range." S. 2761, 98th Cong., 2d Sess. (1984). Before compensation can be recommended to Congress, the Ranchers must establish either a legal or equitable right to compensation.

In this case, the Ranchers asserted three basic arguments before the Hearing Officer to support the existence of a legal or equitable claim. First, the Ranchers argued that the Government's failure to compensate for the loss of property interests on a ranch unit basis constituted a taking without just compensation in violation of the fifth amendment. The ranch unit consisted of three distinct property interests— federal public domain lands for which Taylor Grazing Act permits were issued to the ranch owners, state grazing lease lands under lease to the ranch owners, and the private fee interests (real estate) owned by the individual Ranchers. Undeniably, the Government did not compensate the Ranchers for the incremental value of their fee interests attributable to the presence of the federal grazing permits when these fee interests were actually condemned starting in 1975. The denial of compensation for such incremental value, argued the Ranchers, constituted a wrongdoing in violation of the fifth amendment takings clause of the United States Constitution. The sec-

ond argument advanced by the Ranchers before the Hearing Officer was that the Government's failure to utilize 43 U.S.C. § 315q to compensate for the termination of federal grazing privileges, which occurred in conjunction with the fee condemnation proceedings, was an abuse of administrative discretion. Basically, section 315q allowed agencies to make discretionary payments to persons holding federal grazing permits when such permits had to be canceled or suspended to promote national defense efforts. Third and finally, the Ranchers contended that in view of an earlier lump-sum payment made in 1956 to similarly situated ranchers, the failure to provide a lump-sum payment under 43 U.S.C. § 315q for the termination of grazing privileges in 1975 was discriminatory. The earlier payment in 1956 was made to the McGregor Ranchers when their contiguous property was also taken by the Government for the same national defense purpose of establishing a missile and bombing range.

Before the Hearing Officer, the defendant countered the plaintiffs' contentions with several arguments. First, the defendant noted that federal grazing permits did not constitute valid property rights for purposes of the fifth amendment. Thus, the concept of just compensation did not require recovery for the termination of such rights. Second, the defendant argued that no abuse of administrative discretion had occurred in refusing to apply section 315q to further compensate the Ranchers since the Government justifiably concluded that reasonable compensation had already been paid for the deprivation of the Ranchers' grazing privileges. Finally, the defendant asserted that a discretionary statute, 43 U.S.C. § 315q, was to be applied on an individual basis and therefore the treatment afforded the McGregor Ranchers was simply irrelevant.

2. In Senate Resolution, S.Res. 405, 98th Cong., 2d Sess. (1984), the Senate directed this Court to consider whether the White Sands Ranchers should receive compensation for the loss of mineral claims due to the Government's acquisition of the White Sands Missile Range in addition to the real estate and grazing privileges mentioned. However, the Ranchers herein have failed to pursue any claim for minerals before this Court. Any mineral claims are therefore deemed to have been abandoned by the claimants.

In his opinion, the Hearing Officer found that no legal or equitable claim existed in favor of the White Sands Ranchers on the basis of the evidence presented. The Hearing Officer applied the legal principles of *res judicata, stare decisis,* and statutes of limitation to conclude that the passage of time and prior litigation barred any legal claims the Ranchers could have asserted against the Government in the present context.[3]

In addition, the Hearing Officer concluded that no equitable claim existed in favor of the White Sands Ranchers. As to the Ranchers' first argument, this was so because the claimants' fifth amendment rights had not been violated. This conclusion was premised on the fact that federal grazing permits held by the Ranchers "[did] not constitute property for purposes of the just compensation clause." Therefore, the Government had committed no wrong by compensating the Ranchers only for the value of their privately owned real estate, irrespective of the value added to their property by the presence of federal grazing permits.

As for the Ranchers' second argument, the Hearing Officer determined that the Government had not abused its discretion in applying 43 U.S.C. § 315q. The basis for this determination was that the White Sands Ranchers had been adequately compensated for the termination of their federal grazing privileges and no further compensation was mandated by section 315q. Therefore, given the wide range of discretion granted by section 315q, a rational basis existed to support the Government's denial of additional compensation. Finally, as for the Ranchers' discrimination argument, the Hearing Officer concluded that the White Sands Ranchers were "treated essentially the same" as other ranchers in the administration of 43 U.S.C. § 315q. This finding was premised on the belief that the White Sands Ranchers received roughly the same monetary compensation as had other ranchers, *i.e.,* the McGregor Ranchers, even though there was admitted-

ly a significant difference in the timing of the payments. Thus, the Hearing Officer found that an equitable claim did not exist on the basis of discrimination.

In accordance with the Rules of this Court, the White Sands Ranchers have now appealed to this Review Panel and have filed exceptions to the Hearing Officer's Report and Opinion. *See* RUSCC Appendix D. The Review Panel also heard oral argument. Although the Ranchers' exceptions are ambiguously stated, there are essentially two general contentions which must be addressed by this Review Panel.

Initially, the Ranchers take issue with the Hearing Officer's finding that 43 U.S.C. § 315q did not require additional compensation to be paid for the termination of the Ranchers' federal grazing privileges. In essence, this argument is premised on the repeated charge that section 315q should have been utilized to compensate the Ranchers for the incremental value of their ranch land attributable to the presence of the federal grazing permits. Since payments had been made for this value from 1950 up until 1970, pursuant to the Lease and Suspension Agreements signed with the Ranchers, and since the McGregor Ranchers had been compensated for this value on a lump-sum basis when their ranches were condemned in 1956 under the guise of section 315q, the Ranchers assert that it was an abuse of discretion to suddenly quit paying when their grazing privileges were terminated in 1970. Likewise, it was an abuse of discretion, argues the Ranchers, for the Government to fail to pay the Ranchers for the permanent loss of the federal grazing permits starting in 1975 when they were compensated for the taking of their fee-owned ranches.

In addition, the Ranchers advance a second argument before this Review Panel based essentially on the same charge of discrimination that was alleged before the Hearing Officer. As earlier indicated, the argument based on discrimination is prem-

---

**3.** In their initial brief on appeal, the plaintiffs concede that their legal claims are foreclosed. They do, however, vigorously contest the Hearing Officer's conclusion that they do not have a valid equitable claim.

ised on the concept that since the Government paid the similarly situated McGregor Ranchers a lump sum for the permanent loss of their federal grazing permits in 1956 (pursuant to 43 U.S.C. § 315q), the Government was obligated to do the same for the White Sands Ranchers in 1975 when their ranches were finally condemned in fee. The Ranchers take exception to the Hearing Officer's conclusion that the "White Sands Ranchers were treated essentially the same as the McGregor Ranchers" by the Government in providing compensation for the taking of their respective lands. The Ranchers assert that permanent displacement accompanied by a lump-sum payment and temporary displacement accompanied by incremental compensation dribbled out over decades are simply not the same from a legal or an economic standpoint.

In a Congressional Reference case, the Review Panel must address the arguments advanced by plaintiffs in a restrained environment. The Rules of the Claims Court mandate that "the hearing officer's findings [of fact] shall not be set aside unless clearly erroneous." RUSCC Appendix D ¶ 8; *see Merchants Nat'l Bank v. United States,* 7 Cl.Ct. 1, 7 (1984). As for the conclusions of law made by the hearing officer, the clearly erroneous standard does not apply. *See Merchants Nat'l Bank,* 7 Cl.Ct. at 9. Essentially, the review panel acts as a court of appeals in reviewing the hearing officer's opinion and as such utilizes a *de novo* review standard when considering conclusions of law. *Id.; see also United States v. McConney,* 728 F.2d 1195, 1201–03 (9th Cir.1984).

In accord with the above standards, this Review Panel is unable to find reversible error in the Hearing Officer's Report and Opinion. It is incumbent on the plaintiffs in their exceptions to the Review Panel to point out where the Hearing Officer has erred as a matter of law or where his factual findings were clearly erroneous so as to justify a conclusion contrary to that reached by the Hearing Officer. In this regard, the Ranchers have failed. The legal propositions in the Hearing Officer's

Report and Opinion are correct. After a thorough review of the record below, this Review Panel also deems the Hearing Officer's ultimate findings and conclusions to be supported by the evidence of record. Although the Review Panel does not agree with the Hearing Officer's assessment that a charge of discrimination can be resolved by equating serial payments over 20 years with lump-sum payments, plus interest, our reservations with this monetary equivalent approach do not supply the wrong that would support an equitable claim. These reservations are irrelevant because the plaintiffs have failed to carry their burden of proof with regard to their charge of discrimination. The Ranchers were required to establish that the Government treated the McGregor Ranchers differently in similar circumstances, but the similar circumstances, *i.e.,* taking of their property at roughly the same time, were not established in the record. In view of the wide discretion allowed federal officials in determining payments under 43 U.S.C. § 315q, and in view of the widely dissimilar time frames involved in this case, the Hearing Officer's decision must be affirmed.

Unfortunately for the plaintiffs, the presentation before the Hearing Officer lacked coherence. Plaintiffs' arguments based on abuse of discretion and discrimination might have had far more force and focus if the theory of their case was that a permanent taking had actually occurred in 1956 (or earlier) instead of 1975. That approach might well have established the claim of abuse of discretion and discrimination. However, no hard evidence was presented to the Hearing Officer as to the date of any permanent taking.

In reviewing the record, this Review Panel was able to identify some evidence to indicate that there may in fact have been a permanent taking of the Ranchers' land by the Government as early as 1956. For instance, Mr. Henry K. Shadel, a realty officer for the U.S. Corps of Engineers and a primary negotiator of the Lease and Suspension Agreements entered into in 1950, noted in a memorandum dated May 26, 1966, that attempts had been made to ob-

tain the White Sands Missile Range in fee title as early as 1956, but Congress would not appropriate the funds to do so. Likewise, a press release issued by the Department of Interior in 1949 stated the Government's intent to purchase outright the fee title to all privately owned lands within the White Sands Missile Range provided Congressional authorization could be secured. Furthermore, there were indications in the record that the Government had started a massive building improvement project on the Range during the early 1950's.

Although there are indications, as noted above, of the Government's intent to permanently take the Ranchers' property in 1956 for use as a missile range, the Ranchers have failed to provide the Hearing Officer or this Review Panel with enough evidence to support a finding that a permanent taking did occur in 1956. In the absence of a clearly established date of taking, no taking is proven, and, in this case, there is therefore no basis for a claim of unfair treatment or discrimination. *Barnes v. United States*, 210 Ct.Cl. 467, 479–81, 538 F.2d 865, 873 (1976). This Review Panel is not free to create an equitable claim for the Ranchers herein on the basis of a record offering some indications but no hard evidence. In any event, plaintiffs did not present their case on this basis.

One final note should be mentioned. During the course of this Review Panel's thorough review of the entire record, the Panel was continuously struck by the moving testimony before the United States Senate of many of the Ranchers that have brought this action to this Court. It is very clear that these patriotic and dedicated people have endured much hardship. Sovereign condemnation actions always are disconcerting and many times never place the dispossessed back into the same position as they were in prior to the action. Clearly, this is one of those circumstances. The question before this Court, however, is a relatively narrow one—that is, did the Government of the United States abuse its discretion and discriminate against these Ranchers when (starting in 1975) it condemned in fee their ranches in the White Sands Missile Range. Stated another way, did the Government deprive the Ranchers of what they were constitutionally and/or statutorily due? The Hearing Officer in this action determined the answers to these questions in the negative, and the Review Panel agrees with this determination.

Based on the above discussion, this Review Panel concurs in the Hearing Officer's decision that no legal or equitable claim exists in favor of the White Sands Ranchers. In addition, the Review Panel adopts and incorporates the findings of fact, discussion of law, and conclusions of the Hearing Officer, with the exception of his analysis of economic equivalency, which the Review Panel deems unnecessary. The Ranchers have failed on appeal to establish clear error in the Hearing Officer's decision, even on the basis of the Review Panel's own review of the record to glean facts supportive of a wrong. Thus, the Review Panel recommends that the Chief Judge, in the transmittal of this Report of the Review Panel, as well as the Report and Opinion of the Hearing Officer to the United States Senate as required by S.Res. 405, advise the Congress that the plaintiffs, White Sands Ranchers of New Mexico, do not have a legal or equitable claim against the United States, and that the payment of any sum to the plaintiffs would constitute a gratuity.