**Frederick PAUL, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Cong. Ref. No. 2–88.**

United States Claims Court.

Nov. 7, 1990.

William A. Helsell, Seattle, Wash., for plaintiff. Frederick Huebner, Ann G. Copley and Helsell, Fetterman, Martin, Todd & Hokanson, of counsel.

John S. Gregory, Washington, D.C., with whom was Asst. Atty. Gen. Richard B. Stewart, for defendant. Susan V. Cook, Dept. of Justice, of counsel.

## REPORT OF THE REVIEW PANEL

TURNER, Judge.

The review panel, consisting of Judges James T. Turner, Bohdan A. Futey and Roger B. Andewelt, duly appointed by order dated December 28, 1988,[1] hereby submits its report pursuant to 28 U.S.C. § 2509(d) and RUSCC Appendix D, ¶ 10.[2]

### I

This matter was referred to the court by Senate Resolution 187 (100th Cong.) for a report concerning plaintiff's claim for legal services performed between January 1, 1966 and December 18, 1971 on behalf of Alaskan Eskimos "in connection with the enactment of the Alaska Native Claims Settlement Act of 1971." Consistent with 28 U.S.C. § 2509 pertaining to congressional references to this court, the Senate Resolution sought a report concerning the nature and character of plaintiff's claim against the United States and the amount, if any, legally or equitably due from United States to plaintiff.

The Hearing Officer's Report (HOR) was filed on April 23, 1990. *Paul v. United States*, 20 Cl.Ct. 236 (1990). Plaintiff duly filed exceptions to the report which were addressed in briefs submitted by both parties and argued on July 23, 1990.

### II

Familiarity with the HOR is assumed. Its contents will be set forth here only to the extent necessary for an understanding of our recommendation.

The hearing officer concluded, *inter alia*, that plaintiff "does not have a legal claim or an equitable claim in the juridical sense or as used in a congressional reference" and consequently made no determination of any amount due from the United States.[3] HOR at 53, 20 Cl.Ct. at 272. The hearing officer nonetheless went on to conclude that any payment the United States might choose to make to Paul, in recognition of the legal services which form the basis for his claim, would not constitute a gratuity but rather would be "payment of an equitable claim." *Id.*

Plaintiff concedes that he does not have a legal claim against the United States or an equitable claim in the juridical sense. He excepts to the hearing officer's conclusion that he has no equitable claim in the sense used in congressional references and to the factual findings which underlie the challenged conclusion. Plaintiff seeks to have this review panel reverse the conclusion that plaintiff has no equitable claim in the sense used in congressional references and to find that he is entitled to an award of attorney fees in the amount of 3.6 mil-

---

1. *See* 28 U.S.C. § 2509(a); RUSCC Appendix D, ¶ 5.

2. RUSCC Appendix D, ¶ 10 provides, *inter alia:* "[T]he review panel ... shall file its report with the clerk, for service on the parties."

    RUSCC Appendix D, ¶ 11 sets forth the procedure for the filing and consideration of motions for rehearing to alter or amend the report of the review panel.

    RUSCC Appendix D, ¶ 12 provides: "When all proceedings are concluded, the report of the review panel shall be transmitted by the chief judge to the appropriate House of Congress." *See* 28 U.S.C. § 2509(e). This matter was re-

ferred to the court by Senate Resolution 187 (100th Cong.) and thus the court's report should ultimately be submitted to the Senate.

3. The hearing officer further concluded that recognition of the contributions plaintiff made to the enactment of the Alaska Native Claims Settlement Act of 1971 (which all agree were important and considerable) may be appropriate and further concluded: "In the event [that] Congress and the Executive Branch concur in recognizing Paul's contribution and make a monetary award, such monetary award would be payment of an equitable claim and would not be a gratuity." HOR at 53, 20 Cl.Ct. at 272. This conclusion is addressed in Part VII of this report.

lion dollars.[4]

We affirm the conclusion that no amount is equitably due from the United States but on grounds somewhat different from those relied on by the hearing officer. However, we further conclude, contrary to the recommendation of the hearing officer, that, for reasons discussed in Part VII below, any payment by the United States to plaintiff for his pre-December 18, 1971 services to the Inupiat would constitute a gratuity and not payment of an amount equitably due.

### III

Plaintiff's legal services were provided to the Inupiat, a group of Alaskan natives who mainly reside on the Arctic North Slope of the Brooks Range. "Legal services provided by [plaintiff] included a wide range of advice and activity directed toward organization of Inupiat associations and corporations, collection of anthropological data, litigation, and legislative effort." HOR at 2, 20 Cl.Ct. at 238.

The hearing officer stated, HOR at 2, 20 Cl.Ct. at 238:

Frederick Paul contends that he had a valid, approved contract to provide legal services to the Inupiat, which was abrogated by the United States on enactment of ANCSA. The complaint asserts that according to established principles of law applicable to Indian claims he would have received not less than $10 million. During the course of this proceeding, the claim has been reduced, first to $5.9 million, and at trial to $3.6 million.

Frederick Paul claims he expended 6,621 hours on behalf of the Inupiat during the period January 1, 1966, to December 18, 1971. Of this amount, he asserts only 1,651 hours were compensated under ANCSA, and 4,970 hours have not been compensated. In connection with his representation of the Inupiat, Frederick Paul has received pursuant to ANCSA $275,095....

In sum, plaintiff's claim is that he had enforceable contractual arrangements with the Inupiat pursuant to which he rendered 6,621 hours of legal services over a period of nearly six years ending in December 1971, that his efforts on behalf of the Inupiat (in combination with the efforts of others) resulted in the creation of a fund and a continuing stream of income from which a reasonable, equitable fee could have been paid, that, but for the enactment of ANCSA § 20 (43 U.S.C. § 1619) he would have recovered a reasonable, equitable fee for all of his services to the Inupiat, that the enactment of ANCSA § 20 abrogated his right to proceed against or otherwise collect from the Inupiat for any of the 6,621 hours of services rendered on their behalf, that his award of $275,095 under ANCSA § 20 was less than a reasonable, equitable fee for the services and that, consequently, he is equitably entitled now to the difference between a reasonable, equitable fee for 6,621 hours of legal effort (which involved high risk, enormous responsibility, no prospect of periodic remuneration and tremendous success by one highly skilled and expert in the field of native rights and claims) and the $275,095 he received in the ANCSA fee proceeding, plus an adjustment to compensate for the nearly 20-year delay in payment.

The hearing officer apparently concluded that compensation of $41.55 for each of 6,621 hours received on May 15, 1975, HOR at A–41 (stip. 169), 20 Cl.Ct. at 299, more than nine years after the beginning and more than three years after the end of services extending over six years and involving extreme responsibility, high risk and enormous success was not unreasonably low or inequitable. HOR at 53, 20 Cl.Ct. at 272.

If we were persuaded that plaintiff had indeed rendered 6,621 hours of legal services to the Inupiat over a period of nearly six years, that he had legally enforceable contractual claims against his clients to recover a reasonable, equitable fee for services to be determined in light of the tremendous benefits his efforts helped secure for his clients, the risk he took and the hardship he

---

**4.** In this proceeding plaintiff seeks only compensation for legal services rendered to his native clients; he seeks nothing for reimbursement of expenses incurred by him.

endured and that Congress, by enactment of ANCSA § 20 (43 U.S.C. § 1619) abrogated plaintiff's right to recover for any of these services to the Inupiat, leaving him to share in a two million dollar fund with numerous other worthy claimants and resulting in a payment to plaintiff at $41.55 per hour not counting time spent in fee litigation, we might well conclude that plaintiff had not been reasonably or equitably compensated in the Court of Claims fee proceeding and that, in lieu of such congressionally imposed impediment to full recovery from his clients who reaped enormous benefits from his services, plaintiff has an equitable claim in the congressional reference sense for the difference between a reasonable fee for 6,621 hours of legal services under such difficult circumstances and the $275,095 he received in the ANCSA fee proceeding. In such circumstances we would likely recommend payment of a sum which, when added to the $275,095 already received by plaintiff, would reasonably and equitably compensate him for the services he rendered and the delay in payment he has encountered.[5]

For purposes of this opinion we assume that Paul had, as he claims, enforceable contractual claims against his Inupiat clients for the legal services he rendered to them. Further, it is uncontested that Paul labored for his clients with the skills, under the conditions and with the results alluded to, and that he did so under "unusual and difficult" circumstances. HOR at 18, 20 Cl.Ct. at 249. However, we are not persuaded of the existence of other critical elements of Paul's claim in this proceeding.

IV

█ The fundamental flaw in plaintiff's position is his current assumption and as-

sertion that ANCSA § 20 abrogated all rights to recover from the Inupiat for all of the 6,621 hours of services claimed in this proceeding.

ANCSA § 20 (43 U.S.C. § 1619) provides in pertinent part:

(b) Claims; submission. A claim for attorney and consultant fees and out-of-pocket expenses may be submitted to the Chief Commissioner of the United States Court of Claims *for services rendered before the date of enactment of this Act [Dec. 18, 1971] to any Native tribe, band, group, village, or association in connection with:*

(1) *the preparation of this Act and previously proposed Federal legislation to settle Native claims based on aboriginal title,* and

(2) the actual prosecution pursuant to an authorized contract or a cause of action based upon a claim pending before any Federal or State Court or the Indians Claims Commission that is dismissed pursuant to this Act.

. . . .

(d) Rules for receipt, determination, and settlement of claims. The Chief Commissioner or his delegate is authorized to receive, determine, and settle such claims in accordance with the following rules:

. . . .

(2) The amount allowed for services shall be based on the nature of the service rendered, the time and labor required, the need for providing the service, whether the service was intended to be a voluntary public service or compensable, the existence of a bona fide attorney-client relationship with an identified client, *and the relationship of the ser-*

---

5. In *Paul v. United States,* 231 Ct.Cl. 445, 451–52, 687 F.2d 364 (1983), the United States Court of Claims concluded, in dicta:

If there be any requirement that the amount received by the attorney under [ANCSA § 20] be reasonable ..., we cannot say that the sums received by plaintiffs as a result of the Chief Commissioner's proceedings ... under section 20 were less than the reasonable minimum.

This conclusion was presumably based upon Paul's claim of 5,000 hours of legal services.

The Court of Claims further stated, *Id.* at 452 n. 9, 687 F.2d 364:

At the oral argument, counsel for plaintiffs said that Paul received compensation in the Chief Commissioner's proceedings at the rate of $10–12 per hour (present value). For the pre–1971 period, involved here, that does not seem outrageous, even if Paul would have received more if his fee contracts were fully enforceable.

*vice rendered to the enactment of proposed legislation.* The amount allowed shall not be controlled by any hourly charge customarily charged by the claimant.

. . . .

(4) The amounts allowed for services rendered shall not exceed in the aggregate $2,000,000, of which not more than $100,000 shall be available for the payment of consultants' fees. If the approved claims exceed the aggregate amounts allowable, the Chief Commissioner shall authorize payment of the claims on a pro rata basis.

. . . .

(f) Contract restriction; penalty. (1) No remuneration on account of any *services or expenses for which a claim is made or could be made pursuant to this section* shall be received by any person for such services and expenses in addition to the amount paid in accordance with this section, and *any contract or agreement to the contrary shall be void.*

(2) Any person who receives, and any corporation or association official who pays, on account of such services and expenses, any remuneration in addition to the amount allowed in accordance with this section *shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than twelve months,* or both.

(Emphasis added.)

Manifestly, ANCSA § 20 does not abrogate rights to recover for all services to Alaskan natives rendered prior to December 18, 1971. On its face, it clearly contemplates recovery only for two specifically designated categories of legal services. The statute established a fund to compensate for, and abrogates contractual rights related only to, "services rendered ... in connection with ... the preparation of [ANCSA] and previously proposed Federal legislation to settle Native claims based on aboriginal title" and the actual prosecution of certain litigation. That ANCSA § 20 was plainly not intended by its drafters to abrogate fees for services not *directly* related to preparation of ANCSA or specific litigation is illustrated by the provision of criminal penalties, including incarceration, for violation which would apply to the payor as well as the recipient of legal fees. 43 U.S.C. § 1619(f)(2).

If 43 U.S.C. § 1619(b) had been intended to abrogate claims for *all* services rendered to Alaskan natives prior to December 18, 1971 there would have been no occasion to designate the specific nature of the services. Congress could simply have abrogated claims for *all* services rendered prior to enactment without specifying particular types. Although § 1619(b)(2) (relating to services for prosecution of claims dismissed by the Act) has no application to Paul, it further illustrates the narrow scope of the abrogation Congress intended by the terms of ANCSA § 20.

This interpretation concerning the narrow scope of ANCSA's abrogation of claims for fees was adopted by the Trial Commissioner of the Court of Claims who was appointed to adjudicate, in the first instance, fee petitions submitted pursuant to ANCSA. HOR at 31, 34–38, 20 Cl.Ct. at 257–58, 259–62.

In that proceeding, the trial commissioner ruled, in accordance with the plain language of ANCSA, that not all pre-December 18, 1971 services were compensable from the fund established by ANCSA § 20. He promulgated a list of services which were deemed not "in connection with ... the preparation of" ANCSA and similar prior legislation. Those excluded services were designated as follows:

1. All time spent in establishing a client relationship.

2. Services rendered prior to formation of an actual, bona fide attorney-client relationship.

3. All time spent in connection with litigation other than that dismissed pursuant to ANCSA.

4. Services rendered in connection with filing protests, preserving land claims, advancing land claims settlement legislation and presenting testimony to Congress on proposed native land claims.

5. Services in connection with (1) the formation of a Native Association, borough, corporation, village, or other entity, (2) the general corporate affairs of such an entity (including its tax status), and (3) meetings of the entity or its governing body (except to the extent that time spent in meetings is shown to be directly related to "preparation" of Federal legislation satisfying Section 20(b)(1)'s terms).

6. Any services, not heretofore excluded, in connection with the Alaska land freeze order.

7. Any services, not heretofore excluded, in connection with land protests.

8. Services in connection with meetings with media representatives, civic associations, religious groups or similar groups.

9. Services in connection with the Trans–Alaska pipeline, including administrative hearings, correspondence, negotiations, and meetings or conferences with oil companies or their representatives.

10. Services in connection with state legislative or lobbying activities.

11. Services in connection with (1) confirmation hearings of cabinet officials, or (2) local, state, or federal election activities.

12. Services in solving attorney-client contract problems.

13. Services in (1) educating, training, supervising, or guiding native entities, their members or their employees in the general conduct of business affairs, or (2) resolving cultural, social or economic problems.

14. Services in explaining the meaning of Acts of Congress to native entities.

15. Services in connection with post-settlement plans, consequences and eventualities.

16. Services in connection with obtaining financial assistance for native entities.

17. Services in connection with general "policy" issues.

18. Services in meeting with state political leaders.

19. Services as an officer of, or on the board of directors of, a native entity.

20. Services on, or in connection with, state administrative boards, agencies or task forces.

21. Services in connection with recommendations for investments of settlement proceeds.

22. Services in connection with native allotments.

23. Services in connection with mineral lease sales.

24. Services in connection with meetings or conference of Indians.

25. Services in connection with legal aid for natives.

26. Services in connection with general environmental problems and considerations.

27. Services in maintaining knowledge of proposed (or actual) federal legislation unrelated to land claims settlement.

28. Services in preparing time and expense records in proof of a claim under Section 20(b)(1).

TRIAL COMMISSIONER'S PRE–TRIAL OPINION AND ORDER RE FURTHER PROCEEDINGS, issued October 26, 1973 [6] in proceeding before the Chief Commissioner of the United States Court of Claims in the matter styled In re Attorney and Consultant Claims Pursuant to Section 20, Alaska Native Claims Settlement Act, pp. 26–34.

The trial commissioner concluded that ANCSA § 20(b) "is carefully and intentionally limited to services rendered in connection with the *preparation* of certain Federal legislation." *Id.* at 30 (emphasis in original). "[P]roof of *a clear and direct relationship* between *all* claimed services rendered in such 'preparation' will be a prerequisite to recognition of any such time for

---

6. Thereafter, the attorneys fee claimants settled the claims among themselves. Their settlement was adopted by the trial commissioner and approved by the review panel. Paul was paid

$275,095 for services compensable under ANCSA § 20 on May 15, 1975. HOR at A–41 (stip. 169), 20 Cl.Ct. at 299.

[ANCSA § 20(b)] purposes." *Id.* at 31 (emphasis added).

In 1972, in the Court of Claims fee proceeding, plaintiff asserted a right to payment for *all* services rendered to the Inupiat prior to December 18, 1971. To this extent his position is consistent with his current position that ANCSA § 20 abrogates rights to recover for any pre-December 1971 services to Alaskan natives. However, in certain other litigation Paul has taken an inconsistent position, asserting a right to proceed against Alaskan natives for pre-ANCSA services not described in ANCSA § 20.

In April 1974, Paul filed suit in the Alaska State Superior Court naming as defendants the Arctic Slope Native Association and numerous North Slope municipal organizations. HOR at 38–39, 20 Cl.Ct. at 262. Plaintiff sought fees for services rendered in connection with "borough" work. (For explanation of the services covered by this description, see HOR at 18–19, 20 Cl.Ct. at 249–50). This suit was filed while his ANCSA § 20 claim was pending in the Chief Commissioner's proceeding, yet he was seeking fees for pre-ANCSA services rendered to the Inupiat (as well as post-ANCSA services). *Id.*

In December 1977, plaintiff brought two actions as party plaintiff:

a. He commenced a taking action in the Court of Claims. HOR at 39–40, 20 Cl.Ct. at 263. In that case Paul took a position consistent with his current position that he had enforceable contract rights against his Inupiat clients to recover a reasonable fee for pre-ANCSA services vastly in excess of his ANCSA award, that ANCSA § 20 abrogated all legal claims for pre-ANCSA services and was thus a taking of his vested right to recover a reasonable fee from his clients. *Paul v. United States,* 231 Ct.Cl. 445, 687 F.2d 364 (1980). That suit was dismissed on the merits. *Id.* at 446, 457, 687 F.2d 364.

b. The other case commenced in December 1977 took a position contrary to the one now asserted by plaintiff. That suit was a contract action filed in the federal district court in the Western District of Washing-ton. The defendants included the Arctic Slope Native Association, the Arctic Slope Regional Corporation and eight Inupiat villages. Paul sought a determination of the amount due under his contracts for attorney services and thus, took the position that ANCSA § 20 did not abrogate all claims for pre-ANCSA services rendered to the Inupiat. No disposition of this action is reflected in the record. HOR at 41, 20 Cl.Ct. at 264.

It is concluded that plaintiff clearly understood and acted on the presumption that ANCSA § 20 did not abrogate rights to recover for all pre-ANCSA services, but only those specifically designated therein.

V

Plaintiff now claims that between January 1, 1966 and December 18, 1971 he devoted 6,621 hours to legal work for the Inupiat. For several reasons we are not persuaded that this is an accurate figure on which we should rely in determining whether plaintiff has been reasonably compensated.

A

Paul kept no time records during the relevant period. HOR at A–41 (stip. 170), 20 Cl.Ct. at 299. The figure of 6,621 hours is merely his current estimate. The absence of contemporaneous time records would result in Paul receiving *no* fees for any of the claimed services if this were an application for fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The EAJA requires of one seeking an award of attorneys' fees and other expenses "an itemized statement ... stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. § 2412(d)(1)(B). The "itemized statement" must be sufficiently detailed to show "specific task[s] performed." *Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987). Moreover, "contemporaneous records of the exact time spent by attorneys on a case [as well as] their status and usual billing rates" are "essential to support [an EAJA] claim." *Owen v. United States,* 861 F.2d

1273, 1275 (Fed.Cir.1988). Further, the Federal Circuit Court of Appeals has "reject[ed] unequivocally any suggestion that the Claims Court ha[s] an obligation to reconstruct the bills for [an EAJA applicant]." *Naporano Iron & Metal Co.*, 825 F.2d at 405.

Although the hearing officer made no factual finding concerning the hours of pre-ANCSA service rendered by plaintiff to the Inupiat, he was obviously suspicious of the total claimed by Paul. HOR at 27–28, 20 Cl.Ct. at 255–56. "The number of hours Frederick Paul worked for the Inupiat during the period January 1, 1966, through December 18, 1971, is not supported by evidence in the nature of time sheets or other office records, nor by any audit report with respect to such records." Further, the methodology applied 20 years after rendering services by which Paul arrived at his current estimate is most unsatisfactory.[7] *See Id.*

### B

Over the years, plaintiff has made various estimates and taken various positions in litigation concerning the hours he devoted to Inupiat work before December 18, 1971.[8] His current estimate is the highest yet. The hearing officer found plaintiff's current calculation "not consistent with claims Paul made in other proceedings." HOR at 28, 20 Cl.Ct. at 256. In the Court of Claims ANCSA fee proceeding, Paul claimed 5,000 hours of pre-ANCSA legal work for the Inupiat. The fee petition claiming this number of hours was submitted in 1972 and is the most nearly contemporaneous estimate of time spent on behalf of the Inupiat during the pre-ANCSA period. All subsequent guesses ranged higher. In the litigation filed in June 1976 in the Western District of Washington and

eventually styled *Paul v. Andrus*, plaintiff claimed that the total of his pre-ANCSA hours devoted to Inupiat work was 6,000. By the time the complaint in this litigation was filed in December 1988, the total had expanded to 6,621 hours.

Given this history of estimates by plaintiff and the total absence of any contemporaneous records, we shall not consider as potentially compensable in any context any pre-ANCSA claim beyond the 5,000 hours claimed in the Court of Claims ANCSA fee proceeding.

Another glaring inconsistency in Paul's estimates over the years concerns so-called "borough" work.

a. In this case he testified that he rendered 2,000 hours of legal services per year, that during the relevant period two-thirds of this was devoted to Alaska work and that 639 hours of his Inupiat time was borough work. HOR at 28, 20 Cl.Ct. at 256. However, in fee litigation pertaining to the borough work, he claimed that during the three year period from April 1966 to April 1969 he rendered 2,017.63 hours of legal services for his Arctic Slope clients. That far more contemporaneous estimate is far below his current estimate of 4,000 hours (two-thirds of 6,000 hours) for the same three-year period. HOR at 28, 39, 20 Cl.Ct. at 256, 262.

b. Also, in the borough fee proceeding, Paul claimed and the trial court found that Paul had rendered 504 hours of compensable borough work before April 15, 1969 and 639 hours after that date. On appeal, the Alaska Supreme Court found that only four hours of work prior to April 15, 1969 had been related to the creation of the borough. Paul apparently has taken the 500 hours of work claimed but ultimately

---

7. Plaintiff broadly asserts that during the relevant period he worked 2,000 hours per year and that two-thirds of his time was spent on Alaska work. HOR at 28, 20 Cl.Ct. at 255–56. During this time he maintained his law practice in Seattle, Washington.

8. Plaintiff's estimates of the value of these services has also varied over the years. In this case, plaintiff initially claimed $9 million as an equitable fee for pre-ANCSA services; his expert

witness opined that $3.6 million was fair (trial transcript at 781). In the ANCSA fee proceeding before the Chief Commissioner of the Court of Claims, plaintiff asserted in 1972 that an appropriate total fee for both himself and his law firm, to compensate for a total of 14,774.6 hours of legal services (only about ⅓ of which was claimed by plaintiff personally) was $3,350,000. HOR at 53, 20 Cl.Ct. at 272.

disallowed as borough work and now asserts it as time for which he is entitled to an equitable fee on the theory that ANCSA § 20 abrogated all right to recover therefor.

C

Plaintiff has previously acknowledged, in litigation, that the majority of hours devoted to pre-December 18, 1971 legal work for the Inupiat was devoted to matters outside the scope of ANCSA § 20. In June 1976, Paul brought suit in the United States District Court for the Western District of Washington against numerous defendants, including the Inupiat parties to his retainer contracts, to recover fees in addition to his ANCSA award in the Court of Claims. *See* HOR at 39, 20 Cl.Ct. at 262–263. That action was originally styled *Paul v. Kleppe;* the style was later changed to *Paul v. Andrus.* In an amended complaint dated October 5, 1976, at 13, plaintiff stated:

> The Chief Commissioner's ruling [in the ANCSA fee proceeding] held as non-compensable or presumably non-compensable under the terms of [ANCSA § 20] ... services provided by Plaintiff on behalf of the Inupiat ... which were nonetheless proper under the terms of Plaintiff's various contracts. *Such services held non-compensable exceed over 50% of Plaintiff's services.*

DX 514 at 13 (emphasis added). (In that litigation Paul was claiming 6,000 hours of pre-ANCSA legal services for the Inupiat.)

In this case plaintiff now takes the position, apparently accepted by the hearing officer, that of his pre-ANCSA services to the Inupiat, 1,651 hours were compensated in the Court of Claims ANCSA fee proceeding and that the remainder was not deemed compensable in that proceeding. For purposes of this litigation, we too accept plaintiff's conclusion that 1,651 hours of his services were deemed compensable in the ANCSA proceeding.

D

■ Given that 1651 was the number of hours devoted to work for which recovery was abrogated by ANCSA and further given that Paul received an award in the Court of Claims fee proceeding of $275,095, it follows that he was compensated at the rate of $166.62 per hour for those services. When one considers that his usual fee for services during the same period was approximately $75 per hour, HOR at 18, 28, 20 Cl.Ct. at 249, 256, and that in other litigation plaintiff obtained compensation for pre–1971 legal services to the Inupiat (borough work) at the rate of $125 per hour, HOR at 39, 20 Cl.Ct. at 262, a rate of $166.62 compares favorably, even considering that payment was made in May 1975.

We conclude that such compensation at the rate of $166.62 per hour was reasonable and that, consequently, plaintiff has no valid equitable claim against the United States for work compensated from the ANCSA fund.

VI

■ With respect to the remaining 3,349 hours (i.e., 5,000 less 1,651), we conclude (a) that plaintiff has no equitable claim of any kind against the United States with respect to these services since, as illustrated above, Congress did nothing to prohibit Paul from recovering a reasonable, equitable fee for these non-ANCSA services directly from the Inupiat clients who were the beneficiaries of his services, and (b) that plaintiff released the Inupiat from all claims for those services by a release document which he drafted.

Plaintiff released his Inupiat clients from all claims for any pre-ANCSA services other than those compensated through the Court of Claims fee proceeding and services for borough work. Upon termination of his services as general counsel for the Arctic Slope Regional Corporation in October 1972, Paul and the ASRC negotiated concerning a payment to be made to Paul for his services. Paul requested payment for legal services rendered to the Inupiat before ASRC was chartered. HOR at 32, 20 Cl.Ct. at 258. Final settlement was reached in April 1973 and was consummated by an exchange of a release executed by Paul for a payment from ASRC. HOR at

33, 20 Cl.Ct. at 258–59. The release, *drafted by Paul*, stated:

Receipt is hereby acknowledged from the Arctic Slope Regional Corporation of the sum of $23,500.00 as *payment in full for all of my services rendered to any and all Inupiat Eskimos in whatever individual or corporate form he or they may align themselves*, particularly, Edwardsen vs. Morton and *the application pending under Section 20(g)* of the Alaska Native Claims Settlement Act of 1971, except:

(1) The liability of any and all parties to me for my services in connection with the application and creation of the North Slope Borough, and

(2) This payment is not intended as compensation for services rendered prior to December 18, 1971 which may be recoverable under [ANCSA] Section 20(b), (c) and (d).

DATED this 24th day of April, 1973. *Id.* (emphasis added).

As illustrated above, the scope of the ANCSA abrogation simply had no application in any way relevant to plaintiff other than for services directly related to the enactment of ANCSA and we accept plaintiff's assessment that he devoted 1,651 hours to work found compensable under ANCSA § 20. We find the release drafted and signed by Paul to be another manifestation that he understood that not all pre-ANCSA fees were abrogated by ANCSA § 20 and yet he plainly released his former clients from any further claim for such services.

## VII

The hearing officer concluded that the $275,095 payment received by Paul in the ANCSA fee proceeding was "not unreasonable for the work done." HOR at 53, 20 Cl.Ct. at 272. In keeping with that conclusion, the hearing officer further concluded that Paul does not have an equitable claim against the United States in either the juridical sense or as used in a congressional reference and that "[o]n the facts of this case, the United States has no obligation that would warrant monetary compensa-

tion...." *Id.* The HOR then states that if the United States elects to recognize plaintiff's contributions to the enactment of ANCSA and his work for the Inupiat with a monetary award, "such monetary award would be payment of an equitable claim and would not be a gratuity." *Id.* We disagree and, for reasons set forth above, hold that any payment which Congress may choose to make to plaintiff in recognition of his considerable services to the Inupiat prior to the enactment of ANCSA would constitute a gratuity.

## VIII

In summary, upon consideration of plaintiff's exceptions to the Hearing Officer's Report filed April 23, 1990, 20 Cl.Ct. 236 (1990), plaintiff having conceded that he has no legal claim against the United States nor any equitable claim in the juridical sense, we conclude that no amount is equitably due to plaintiff from the United States as a result of plaintiff's legal services rendered to the Inupiat and that any payment which Congress may award to plaintiff for services to the Inupiat prior to the enactment of ANCSA would be a gratuity.

