**BANFI PRODUCTS CORPORATION,**
**Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Cong. Ref. No. 90–3981X.**

United States Court of Federal Claims.

Aug. 14, 1998.

Edward Wood Dunham, New Haven, CT, for plaintiff.

Domenique Kirchner, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

Before the Review Panel: JAMES F. MEROW, Senior Judge, Presiding Officer, and ROBERT H. HODGES, JR., and DIANE GILBERT WEINSTEIN, Judges, Members of the Panel.

## REPORT OF THE REVIEW PANEL

House Resolution 308, 101st Cong. (1990) referred a pending bill, H.R. 5148, 101st Cong. (1990) ("A bill for the relief of Banfi Products Corporation") to this Court for proceedings in accordance with 28 U.S.C. § 2509.

In pertinent part H.R. 5148 provides:

SECTION 1. SATISFACTION OF CLAIM AGAINST THE UNITED STATES.

(a) IN GENERAL.—(1) The Secretary of the Treasury shall pay, out of any money in the Treasury not otherwise appropriated, to Banfi Products Corporation, a New York corporation with an office at Old Brookville, New York, a sum of money in compensation for amounts expended by Banfi Products Corporation as a result of the recall in 1985 and 1986 of certain cases of imported Riunite wine based upon the negligent identification by the United States Government of such wine as a health hazard.

(2)(A) Amounts expended by Banfi Products Corporation for which compensation under paragraph (1) is made shall include, but not be limited to, amounts expended as—

(i) refunds to distributors of the purchase price of the recalled wine;

(ii) costs, credits, and refunds for recalled wine owned by Banfi and held in inventory at the time of the recall;

(iii) reimbursements to distributors for their transportation, storage, and handling costs associated with the recall; and

(iv) other costs incurred for transportation, destruction, brokerage and custom fees, demurrage, printing, and postage.

(B) Compensation under paragraph (1) shall not be made for loss of anticipated profits or legal fees associated with the recall of the wine described in that paragraph.

(b) CONDITION OF PAYMENT.—The payment of the sum set forth in subsection (a)(1) shall be in full satisfaction of all claims of Banfi Products Corporation against the United States in connection with the recall described in subsection (a)(1).

As contemplated by 28 U.S.C. § 2509, upon receipt of the reference by Congress the matter was assigned to a Judge of this Court, designated as a Hearing Officer. Following extensive pretrial and trial proceedings, the Hearing Officer on November 26, 1997 filed a comprehensive report, subsequently modified by Errata, filed on January 9, 1998. The Hearing Officer's Report concluded that Banfi Products Corporation, "... does not have a viable legal or equitable claim against the United States and such relief should be denied." *Banfi Products Corp. v. United States,* 40 Fed.Cl. 107, 141 (1997).

The Hearing Officer's Report also concluded that, "[a]ny award to the plaintiff would be a gratuity." 40 Fed.Cl. at 141–142. Following this determination, the Hearing Officer proceeded on the assumption that, at times in Congressional Reference proceedings, pursuant to 28 U.S.C. § 2509, the Court has recommended an amount for a gratuity and, as a result, included additional discussion as to a gratuity award. *Id.*

Following the filing of the Hearing Officer's Report, the parties filed exceptions, or noted an intention to file exceptions, and a briefing schedule was established. After obtaining several extensions of the time for filing briefs, on June 15, 1998, the parties filed a Joint Stipulation withdrawing their exceptions to the Hearing Officer's Report, as modified by the Errata, filed January 9, 1998.

Accordingly, pursuant to 28 U.S.C. § 2509(d), the Review Panel must proceed to "... adopt or modify the findings or the conclusions of the Hearing Officer." *McQuown v. United States,* 199 Ct.Cl. 858, 861 (1972).[1]

---

1. The report required to be submitted to Congress by 28 U.S.C. § 2509 is that of the review panel. *See* 28 U.S.C. § 2509(e) ("The panel shall submit its report to the chief judge for transmission to the appropriate House of Congress."). The hearing officer's report is merely a recommendation to the review panel. *See* 28 U.S.C. § 2509(d). *See generally Braude v. United States,*

After consideration and in the absence of any exceptions filed by the parties, the Review Panel adopts the findings and conclusions of the Hearing Officer with the exception of those portions of the Report concerning the award of a gratuity amount.

As the Hearing Officer notes, 28 U.S.C. § 2509(c) does not contemplate that the Court will consider or report any amount due as a "gratuity." 40 Fed.Cl. at 121. The governing statute provides for a report to Congress as to the "... amount, if any, legally or equitably due from the United States to the claimant." In recent years, the Court has uniformly employed the term "gratuity" as applying to the situation where no legal or equitable claim has been established such that no award is recommended—that is, any payment would be a "gratuity." *See e.g., Oliver v. United States,* 217 Ct.Cl. 742 (1978); *Arizona Ins. & Inv. Co. v. United States,* 221 Ct.Cl. 997, 998 (1979); *Fass v. United States,* 217 Ct.Cl. 743 (1978); *Sperling & Schwartz, Inc. v. United States,* 218 Ct.Cl. 625, 627 (1978); *Johnstone, Jr. v. United States,* 218 Ct.Cl. 628, 629 (1978); *Wong v. United States,* 220 Ct.Cl. 750–751, (1979); *Arizona Ins. & Inv. Co. v. United States,* 221 Ct.Cl. 997, 998 (1979); *Ingram v. United States,* 221 Ct.Cl. 999, 1000 (1979); *ISC Metals, Inc. v. United States,* 223 Ct.Cl. 626–627 (1980); *Stewart v. United States,* 227 Ct.Cl. 511, 512 (1981); *Pomaski v. United States,* 230 Ct.Cl. 713, 714 (1982); *Ward v. United States,* 1 Cl.Ct. 46, 49 (1982); *Acuna v. United States,* 1 Cl.Ct. 270, 280 (1982); *Shane v. United States,* 3 Cl.Ct. 294, 306 (1983); *Lance Industries, Inc. v. United States,* 3 Cl.Ct. 762, 780 (1983) [2]; *Sea–Gate, Inc. v. United States,* 4 Cl.Ct. 25, 38 (1983); *California Canners & Growers v. United States,* 9 Cl.Ct. 774, 786 (1986); *White Sands Ranchers of New Mexico v. United States,* 16 Cl.Ct. 13, 17 (1988); *Paul v. United States,* 21 Cl.Ct. 758, 767 (1990); *Spalding & Son, Inc. v. United States,* 28 Fed.Cl. 242, 251 (1993); *Sneeden v. United States,* 33 Fed.Cl. 303, 312 (1995);

*Bear Claw Tribe v. United States,* 36 Fed.Cl. 181, 192 (1996); *Martin v. United States,* 37 Fed.Cl. 86, 94 (1996); *Kanehl v. United States,* 38 Fed.Cl. 89, 106 (1997); *INSLAW, Inc. v. United States,* 39 Fed.Cl. 307, 410 (1997); *Menominee Indian Tribe of Wisconsin v. United States,* 39 Fed.Cl. 441, 458 (1997). *See also* M. Bennett, Private Claims Acts and Congressional References, 90th Cong., 2d Sess. 7 (Comm. print 1968).

Use of the term "gratuity" other than, as employed in 28 U.S.C. § 2509, to recommend against any payment can have adverse consequences. For example, in *Burt v. United States,* 199 Ct.Cl. 897 (1972) monetary relief was recommended by the Court as an equitable claim. The bill granting relief, H.R. 6624, 93d Cong., 1st Sess., was then amended in committee to recharacterize the award "as a gratuity." H.Rept. No. 93–441, 93d Cong. 1st Sess. This bill, upon enactment, was vetoed by the President. The veto message explained the President's action as follows (10 Pres. Doc. 1387 (1974)):

\*     \*     \*     \*     \*     \*

Approval of H.R. 6624 cannot, in my view, be justified by invoking terms such as "gratuity," as the awards are characterized in the bill, or "broad moral considerations," the basis used by the Court of Claims panel. To adopt such an approach could easily set a precedent for the payment of a myriad of claims involving financial hardship to selected individuals simply on the grounds that they lack legal redress. Once we start down this road, it will be difficult, if not impossible, to turn back.

I urge that in the future Congress adhere to the traditional equity basis for awards, whether or not they have been recommended by the Court of Claims under congressional reference procedures.

In the instant case, Congress did not pass a jurisdictional act, as in *Mizokami v. United*

---

38 Fed.Cl. 476, 477–478 (1997) (dissenting on other grounds).

**2.** In *Lance,* the parties had stipulated a sum as representing the damages if liability were found. The *Lance* Hearing Officer found no legal or equitable liability, but then also noted record evidence disagreed with the previously stipulated damage amount. The Hearing Officer found that the record would support only a much lower amount, "[w]ere an award recommended,...." 3 Cl.Ct. at 780, n. 6. In *Lance,* no "gratuity" amount was found or recommended.

*States,* 188 Ct.Cl. 736, 740, 414 F.2d 1375 (1969), or in any other way add jurisdiction, beyond that set forth in 28 U.S.C. §§ 1492, 2509, to provide the basis for considering and reporting any gratuity award in this matter. This discussion included in the Report constitutes surplusage.

Pursuant to 28 U.S.C. § 2509(d), the Hearing Officer's Report is modified to delete the following:

(1) The words "in comparison to a gratuity" and the last sentence of the first paragraph on page 20 of the Slip Opinion, 40 Fed.Cl. at 122 (in first sentence and last sentence in paragraph before "B. Legal Claim").

(2) The "D. Determination of Negligence by FDA in Identifying Riunite as a Health Hazard" section of the Report commencing on page 29, of the Slip Opinion, 40 Fed.Cl. at 129.

(3) The language commencing "Nevertheless" and concluding with "action" in the conclusion of the Report at page 47 of the Slip Opinion, together with footnote 21, 40 Fed.Cl. at 141–142.

## CONCLUSION

Accordingly, as modified above, the Review Panel adopts the well supported findings and the conclusion of the Hearing Officer that Banfi Products Corporation has neither a viable legal or equitable claim against the United States stemming from the events at issue and that, consequently, any payment to plaintiff would constitute a gratuity.